# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PATRICK GALLAGHER, | ) | 1:10-cv-00942-OWW-SKO |
| | ) | |
| | ) | **FINDINGS AND RECOMMENDATIONS** |
| Plaintiff, | ) | **REGARDING PLAINTIFF'S SOCIAL** |
| | ) | **SECURITY COMPLAINT** |
| v. | ) | |
| | ) | (Doc. 1) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff Patrick Gallagher ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. § 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.

## FACTUAL BACKGROUND

Plaintiff was born in 1985, completed the 11th grade while enrolled in special resource classes, and worked for three years in fast food restaurants and briefly in landscaping and telemarketing. (Administrative Record ("AR") 98, 34-35, 183-84, 37, 110, respectively.) On July

12, 2007, Plaintiff filed an application for SSI, alleging disability beginning on April 1, 2004, due to attention deficit hyperactivity disorder ("ADHD"), inability to concentrate, short-term memory problems, and auditory hallucinations.  (AR 98-101, 109.)

**A.     Medical Evidence**

Plaintiff was seen between November 24, 1997, and October 26, 1998, as a child/adolescent by the Stanislaus County Department of Mental Health while on probation for burglary.  (AR 173, 177-81.)  Plaintiff was referred to that facility for "being out of control at home, and for [a] history of fire setting (age 7), vandalism, and having ADD [attention deficit disorder]."  (AR 173.)  Plaintiff was "angry, anxious, and dysthymic" when he started the program, and the "source of [the] problems was [the] relationship between [his] depressed mother and [his] arrogant, dominating father."  (AR 173.)  The counselor worked with the family and, although he saw "very little" of Plaintiff, Plaintiff "seemed happier, got in[to] less trouble and stopped fighting with his brother" by the end of the treatment.  (AR 173.)  The therapy was stopped because Plaintiff was released from probation; his diagnoses at time of discharge included generalized anxiety disorder and ADHD.  (AR 173.)

Plaintiff was then referred back to Stanislaus County Department of Mental Health by his parole officer between July 13, 1999, and September 3, 2002, "due to concerns regarding [Plaintiff's] daily use of [m]arijuana, intense family conflict, and depressed mood."  (AR 172, 174-75.)  The program used both individual and family treatment and "[d]uring the course of treatment [Plaintiff's] anxiety and depression decreased substantially."  (AR 172.)  Plaintiff "was able to obtain and keep a job, was able to successfully graduate from drug court and was attending school regularly."  (AR 172.)  Plaintiff was discharged from the program due to his "successful completion of treatment goals and his [discharge] from probation," and his discharge diagnosis was ADHD.  (AR 172.)

Plaintiff was seen by California Forensic Medical Group between December 18, 2005, and December 28, 2005, while he was incarcerated.  (AR 185-86.)  The record indicates that Plaintiff had been convicted of a misdemeanor at the age of 20 for firing a 9-mm gun into an occupied room; he served six months in jail.  (*See* AR 201, 275-76.)  While in treatment during that time, Plaintiff was placed in a safety cell and indicated that he was "beginning to hear voices."  (AR 185.)  Plaintiff was

1    "very dramatic" and acted like he was crying but without real tears.  (AR 186.)  Plaintiff then

2    reported that he did not hear voices but said instead it was "like ideas" in his head.  (AR 186.)

3           On March 19, 2007, Tom Crain, M.F.T., of Sierra Vista Child & Family Services, wrote a

4    letter indicating that he had been seeing Plaintiff for general counseling as a condition of his

5    probation and that Plaintiff had completed the anger management program at the agency.  (AR 188.)

6    Mr. Crain stated that Plaintiff had a "history of being diagnosed as having bipolar disorder for which

7    he receives medication.  He also had a diagnosis of ADHD.  He also complains of having difficulty

8    concentrating." (AR 188.)  Mr. Crane observed that Plaintiff "has some cognitive impairment" and

9    that Plaintiff "seems 'slow' in understanding" conversations.  (AR 188.)

10          Plaintiff was first seen on June 25, 2007, by Daniel Diep, M.D. of Golden Valley Health

11   Centers.  (AR 194-98.)  The facility's "Master Problem List" indicates that Plaintiff was suffering

12   from major, chronic, or recurring problems of ADHD, bipolar disorder, marijuana use, and a history

13   of learning disabilities.  (AR 194.)  On June 25, 2007, Dr. Diep stated that Plaintiff was "inattentive

14   in class and at home" and was "[u]nable to hold down [a] job."  (AR 198.)  Plaintiff was started on

15   the medication Strattera.  On July 13, 2007, Dr. Diep stated that Plaintiff had ADHD and "probable

16   bipolar" disorder and the medication Depakote was added.  (AR 197.)  On July 27, 2007, Plaintiff

17   indicated that he felt that his "mood was more 'even' and not as irritable"; his medications were

18   continued.  (AR 196.)

19          Plaintiff was initially seen by Health Services Agency on August 25, 2007.  Plaintiff was

20   required to enroll in a mental health program after being released from his incarceration and while

21   on probation.  (AR 275-76.)  On August 25, 2007, the treatment notes indicate that Plaintiff had

22   "anger management issues" and a low "tolerance to frustration." (AR 276.)  Plaintiff was "currently

23   stable on Strattera." (AR 276.)

24          On September 10, 2007, Plaintiff returned to Dr. Diep.  Plaintiff reported that he wanted to

25   change the medication Depakote because he thought it was making him feel more angry and

26   desperate; however, he felt that the Strattera was "helping" him.  (AR 195.)  Dr. Diep indicated that

27   Plaintiff had "anger issues" and that he "blew up" at an assessment appointment.  (AR 195.)

28   Dr. Diep questioned whether Plaintiff had a diagnosis of bipolar disorder.  (AR 195.)

On September 27, 2007, Plaintiff continued his care at Health Services Agency.  (AR 275.) The notes indicate that Plaintiff reported a diagnosis of ADHD and stated that in the past he had been on the medications of Cylert, Ritalin, Imipramine, and Clonidin; he had recently been taking Depakote but it was not helpful as it made him feel angry.  (AR 275.)  Plaintiff reported that he had "sticky fingers" when he was young, that he had been in juvenile hall for petty theft, and that he had "always been impulsive."  (AR 275.)  Plaintiff indicated that he was depressed.  (AR 275.)  On October 15, 2007, the medical notes state that Plaintiff was continuing to take Strattera and that he felt that he was "in a good mood with good family dynamics."  (AR 274.)

On October 20, 2007, Roxanne Morse, Ph.D. provided a psychological evaluation of Plaintiff to assist in determining his disability status.  (AR 200-04.)  Dr. Morse indicated that Plaintiff had a diagnosis of ADHD since the age of nine and was currently taking Strattera for that condition. (AR 200.)  However, Plaintiff had discontinued Depakote, which is used for mood stabilization, against medical advice.  (AR 201.)  Plaintiff's test results indicated borderline intellectual functioning and ranged from very low to average.  (AR 203.)  Dr. Morse determined a diagnostic impression of depressive disorder, ADHD, personality disorder, and communication disorder and found that Plaintiff had a "marked difficulty in the area of with auditory processing making it difficult for him to receive and translate instructions in order to make accurate decisions regarding his behavior."  (AR 203-04.)  Additionally, Plaintiff "was able to understand, remember, and carry out simple instructions" but had "marked difficulty with detailed and complex instructions." (AR 204.)  Dr. Morse found that, based on Plaintiff's behavior, reported history, and his problems with auditory processing, ADHD, and impulsivity, Plaintiff's "ability to interact with the public, supervisors, and coworkers appears to be impaired."  (AR 204.)

On October 26, 2007, Plaintiff was seen again by Health Services Agency and reported that the medication Strattera was helping with his depression and insomnia.  (AR 273.)  On November 2, 2007, the progress notes state that Plaintiff was "stable on Strattera" and that he was waiting for a psychological consultation.  (AR 271.)  On December 4, 2007, the notes indicate that Plaintiff had a diagnosis of bipolar disorder "per history" and ADHD, that his aggressive behavior had decreased

since he had joined a counseling session, and that he felt more "stable [and] functional" since he had been taking Strattera. (AR 270.)

On December 7, 2007, State Agency physician Evelyn B. Aquino-Caro, M.D. reviewed Plaintiff's records. (AR 205-21.) Dr. Aquino-Caro completed a mental residual functional capacity ("RFC") assessment and found moderate limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions and in his ability to interact appropriately with the general public.[1] (AR 216-17.)  No other limitations were indicated. (AR 216-17.)  Dr. Aquino-Caro opined that Plaintiff would be able to relate to and accept direction from supervisors and remain socially appropriate with coworkers without being distracted by them; however, Plaintiff would have difficulty dealing with the public. (AR 218.)  Plaintiff would be able to perform simple, routine work involving one- to two-step job tasks and instructions. (AR 218.)

On January 7, 2008, Plaintiff returned to Health Services Agency and stated that he had not attended his "wellness recovery" sessions and that he had stopped taking Strattera. (AR 269.) Plaintiff indicated that he planned to apply for Social Security disability. (AR 269.)  When his counselor expressed "concerns" about the application, Plaintiff "became aggressive" and used "the 'f' word several times," claiming his could "get disability from his previous doctor." (AR 269.) Plaintiff became "more aggressive" and rejected his father's attempts to calm him; he "stepped out of the room cursing [and] [l]eft the clinic." (AR 269.)  It does not appear that Plaintiff returned to the clinic again for additional treatment.

On July 7, 2008, Robert L. Morgan, Ph.D. conducted a comprehensive psychological evaluation of Plaintiff. (AR 241-68.)  Dr. Morgan indicated that "no specific medical records were provided for review prior to the evaluation" and that Plaintiff was the "[s]ource of information" and a "fair historian." (AR 241.) Plaintiff stated that he was not taking medication at the time of the

---

[1] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

exam because it would make him feel like a "zombie." (AR 243-44.) Plaintiff reported the "occasional use of cannabis." (AR 244.) Plaintiff indicated that he had "auditory hallucinations" and stated that he would hear "'people calling [his] name.'" (AR 245.) Dr. Morgan's testing determined that Plaintiff was "within the borderline range of functioning" and that he was moderately to severely depressed. (AR 246.) Plaintiff reported "severe difficulties with failing to pay close attention" and with making "careless mistakes in his work." (AR 247.) Dr. Morgan indicated a diagnostic impression of bipolar disorder, ADHD, reading disorder, and disorder of written expression, and ruled out cannabis abuse. (AR 248.) Dr. Morgan assessed Plaintiff and opined that he met the "criteria for bipolar disorder" and presented with a diagnosis of ADHD that "has persisted for a number of years and has been largely untreated other than a course of Strattera." (AR 248.) Dr. Morgan stated that Plaintiff was disabled and that he met the requirements for 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.04, the listing for an affective disorder, "specifically a bipolar syndrome with a history of episodic periods." (AR 248, 250.)

**B.    Lay Testimony**

On July 26, 2007, Plaintiff completed an adult function report. (AR 118-25.) Plaintiff indicated that he lived at home with his parents and that his daily activities consisted of "looking for something to do" and "play[ing] video games when [he] can concentrate." (AR 118.) Plaintiff would help to care for the family pets, was able to take care of his personal grooming, would "sometimes" cook and help with house and yard work, but needed reminders to take his medicine. (AR 119-20.) Plaintiff was unable to drive because he took the driver's test "20 times and failed" due to his inability to concentrate. (AR 121.) Plaintiff's hobbies included playing video games, playing guitar, and cooking, but there were times he was unable to concentrate on these activities. (AR 122.) Plaintiff was able to socialize with his friends, but his friends would inform him that he would answer questions that had been posed hours earlier. (AR 123.) Plaintiff indicated that he would have trouble keeping track of his work schedule and would "show up" on days that he was not supposed to work. (AR 124.) Plaintiff stated that he did not handle stress well and that he had a tendency to snap occasionally. He also had difficulties with changes in his routine and indicated that "[t]he thought of everything being changed around is just overwhelming." (AR 124.)

On July 28, 2007, Plaintiff's mother, Susan Gallagher, completed a third party function report. (AR 126-138.) Ms. Gallagher stated that Plaintiff has a "very short attention span," "gets distracted very easily," and has difficulty in concentrating, listening, and following directions or a conversation. (AR 126.) Plaintiff's daily activities included occasional cooking, playing video games, helping with chores, and taking care of the animals; however, Plaintiff would also sit "staring into space swing[ing] a stick around in the yard." (AR 126.) Ms. Gallagher indicated that Plaintiff was able to perform house and yard work but that he "needs supervision. He forgets, he gets distracted, [he] can't focus or concentrate. [He] doesn't finish or pay attention to what he's doing." (AR 129.) Ms. Gallagher stated that Plaintiff would socialize with his friends and play video games "almost every day"; however, his friends would get "frustrated with him because he is slower and doesn't get things." (AR 130-31.) Plaintiff also would become "anxious" and "panicky" and would get "almost enraged at times." (AR 132.) Plaintiff would stop doing tasks in the middle and would forget what he was doing. (AR 133.) Plaintiff told Ms. Gallagher that he hears voices when he wakes up that put "bad ideas" into his head but that he had not acted upon them. (AR 134.) Ms. Gallagher stated that Plaintiff was "impulsive" and referenced his incarceration, noting that he had aimed an unloaded gun at his sister's boyfriend.[2] (AR 134.) Plaintiff had no concept of numbers or time, and when he had been working he would arrive at the wrong time or on his days off. (AR 136.) Plaintiff would become "very anxious, stressed and almost out of control" when he thought he was going to miss an appointment, and would have a "panic[] attack" until his mother agreed to "take him hours early" to his appointment. (AR 136.) Ms. Gallagher stated that Plaintiff "was never able to focus, concentrate or pay attention." (AR 127.)

## C. Administrative Hearings

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 44-48, 51-56, 57.) ALJ Sandra Rogers held hearings on May 25, 2009, at which Plaintiff

---

[2] Other records indicate that Plaintiff fired the gun. (*See* AR 201, 275-76.)

testified, and on June 30, 2009, at which vocational expert ("VE") Stephen B. Schmidt testified. (AR 31-39, 20-30, respectively.)

### 1.     Plaintiff's Testimony

Plaintiff testified that he was 24 years old at the time of the hearing and that he lived at home with his parents, brother, and sister. (AR 33-34.)  Plaintiff completed the 11th grade and had been in special resource classes; he had not taken the GED test because he was "unable to pay for it all." (AR 34-35.)  Although he was able to read and write, he had problems and needed help with filling out his Social Security forms.  (AR 35.)  Plaintiff stated that he had done prior work in landscaping and fast food, and that he did chores at home.  (AR 37.)  Concerning his prior fast food employment, Plaintiff testified that "[o]ne job let [him] go because [he] was too slow and [he] was taking too long in the drive-through."  (AR 37.)  Plaintiff indicated that he agreed with the assessment that he could not "do things fast enough" but that things were "a little bit better" when he was on medication. (AR 37.)  However, Plaintiff said that he was unable to make decisions.  (AR 37.)  Plaintiff stated that he was taking medication for attention deficit disorder, hyperactivity, and bipolar disorder; he felt the "same" on the medication and it had not made a difference.  (AR 37-38.)  Plaintiff indicated that he would "get angry" when he was "pressured" to do something that he did not know how to do and that he had trouble dealing with people.  (AR 38.)  Plaintiff testified that "[o]ne doctor said [he] should at least try to get some help or Social Security."  (AR 38.)

### 2.     VE Testimony

The ALJ asked the VE whether someone would be able to perform Plaintiff's prior work as a fast-food crew member or telephone solicitor if the hypothetical person was of Plaintiff's age, background, and work experience and had borderline to low average cognitive functioning, moderate to marked difficulty with auditory processing, marked difficulty with carrying out detailed instructions, difficulty interacting appropriately with other people, and impairments in his ability to interact with the public, supervisors, and coworkers. (AR 23-24.)  The VE noted that he could not make a determination based on the purported impairments in Plaintiff's ability to interact with others because "impaired is a rather unspecific term"; the VE then testified that Plaintiff would not be able to perform his former work due to his marked deficiency in auditory processing and comprehension.

(AR 24.)  The VE stated, however, that Plaintiff could perform other jobs, including commercial cleaner, dishwasher, and hand packer.  (AR 24.)

The ALJ posed an additional hypothetical in which the person had the same age, education, and work experience as Plaintiff, was able to understand simple, routine one- and two-step instructions, could relate and accept instructions from supervisors, and would remain socially appropriate with coworkers without being distracted by them but would have difficulty dealing with the public.  The VE testified that such a person would be able to work at some of the prior jobs mentioned but not others, specifically as a hand packer but not as a dishwasher because that position may have three- to four-step tasks.  (AR 25.)  The VE then stated that there were other jobs that Plaintiff could perform, including machine operator and assembler.  (AR 25.)  However, the VE admitted to Plaintiff's counsel that if Plaintiff had "inappropriate behavior on the job" that would be a "different issue" not considered within the hypotheticals presented.  (AR 27-28.)

**D.    ALJ's Decision**

On October 29, 2009, the ALJ issued a decision finding Plaintiff not disabled since July 12, 2007, the date of the application.  (AR 6-17.)   Specifically, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the application date of July 12, 2007; (2) Plaintiff had "severe" impairments of depressive disorder, personality disorder, communication disorder, and ADHD based on the requirements in the Code of Federal Regulations; (3) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff had the RFC to perform a full range of work at all exertional levels but with nonexertional limitations of one- to two-step instructions; additionally, Plaintiff was also able to relate to and accept direction from his supervisor and remain socially appropriate with coworkers but would have difficulty dealing with the public, was able to endure normal stress, but had marked difficulty in auditory processing making it difficult for him to receive and translate instructions in order to make accurate decisions regarding his behavior; (5) Plaintiff was unable to perform any past relevant work; (6) Plaintiff was defined as a younger individual on the alleged disability onset date; (7) Plaintiff had a limited education and was able to communicate in English; (8) the transferability of job skills was not an issue because Plaintiff's past

relevant work was unskilled; (9) there were jobs that exist in significant numbers in the national economy which Plaintiff could perform; and (10) Plaintiff had not been under a disability as defined in the Social Security Act since July 12, 2007, the date of the application.  (AR 11-16.)

Plaintiff sought review of this decision before the Appeals Council.  On March 26, 2010, the Appeals Council denied review.  (AR 1-3.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

**E.     Plaintiff's Contentions on Appeal**

On May 25, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  Plaintiff contends that (1) the ALJ failed to give good reasons to reject the medical opinions of Dr. Morse and Dr. Morgan and, as such, the RFC was not supported by substantial evidence; (2) the ALJ did not analyze all of Plaintiff's impairments established in the record; and (3) the ALJ did not give good reasons to reject the lay testimony of Ms. Gallagher, Plaintiff's mother.

**SCOPE OF REVIEW**

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform his past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

Plaintiff asserts that the ALJ failed to consider all of his impairments, failed to properly consider the medical opinions of Dr. Morgan and Dr. Morse, and failed to give good reasons for rejecting the lay testimony of Ms. Gallagher, Plaintiff's mother.

**A.     The ALJ's Consideration of Plaintiff's Impairments**

Plaintiff asserts that the ALJ failed to address Plaintiff's diagnosed conditions of bipolar disorder, a reading disorder, and a written expression disorder, and thus failed to evaluate these conditions and assess their resulting impairments at the second step of the ALJ's analysis.  Because these conditions were not considered, Plaintiff argues that the ALJ failed to assess the ways that each impairment, alone and in combination with each other, affected Plaintiff's basic work abilities.

"The mere existence of an impairment is insufficient proof of a disability. . . .  'A claimant bears the burden of proving that an impairment is disabling.'"  *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citations omitted).  A medical diagnosis does not create a finding of disability.  "A mere recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities. Put another way, a medical diagnosis does not an impairment make."  *Nottoli v. Astrue*. No. CIV S-09-0609 EFB (TEMP), 2011 WL 675290, *3 (E.D.Cal. Feb. 16, 2011).

The ALJ determined that Plaintiff had the severe impairments of "depressive disorder, personality disorder, communication disorder, [and] attention deficit/hyperactivity disorder." (AR 11.)  The ALJ then analyzed Plaintiff's disabilities in regards to his activities of daily living, social functioning, concentration, persistence and pace, and for episodes of decompensation, and based her RFC upon the evidence in the record.  (AR 12.)  "In making a determination of disability, the ALJ must develop the record and interpret the medical evidence. . . . In doing so, the ALJ must consider the 'combined effect' of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. . . . However, in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).

Moreover, differing diagnoses without separately identifiable symptoms or limitations may also represent disagreement among the doctors regarding the nature of the condition or how it should be diagnostically characterized.  Differing diagnoses do not necessarily mean that a plaintiff suffers from a multitude of conditions, each with its own discrete set of impairments.

Plaintiff has not shown how the diagnoses of bipolar disorder, reading disorder, and written expression disorder created limitations outside of the limitations discussed in the ALJ's decision. Plaintiff asserts that the ALJ's failure to discuss these diagnoses was error, but fails to identify any specific limitations based upon these diagnoses that were not considered by the ALJ.  *See Shinseki v. Sanders*, 556 U.S. __, 129 S. Ct. 1696, 1705-06 (2009) (The party attacking an agency's determination has the burden to show that prejudice resulted from the error.).  The mere diagnosis of an impairment, without more, does not establish that the impairment is severe or disabling.  *See Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982) (noting that the existence of a diagnosed emotional disorder "is not *per se* disabling," and that "there must be proof of the impairment's disabling severity"); *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (holding "the claimant must show more than the mere presence of a condition or ailment" at Step Two).  Accordingly, even if the ALJ's lack of acknowledgment of specific diagnoses was error, Plaintiff failed to show that there was any prejudice as a result.

**B.    The ALJ's Consideration of Medical Opinions**

Plaintiff asserts that the ALJ did not give "good reasons" for rejecting the medical opinions of Dr. Morse and Dr. Morgan and, as such, the RFC was not supported by substantial evidence. (Doc. 16, 6:19-20.)  Plaintiff argues that the ALJ improperly rejected Dr. Morgan's finding that Plaintiff met the listings for affective disorder.  Further, the ALJ's conclusion that Plaintiff was able to accept instruction and remain socially appropriate with coworkers but would be impaired in his interactions with the public was not supported by Dr. Morse's findings.

Defendant contends that the ALJ properly gave little weight to Dr. Morgan's opinion, finding that it relied too heavily upon Plaintiff's non-credible self-reporting, it contradicted the record, and it did not follow the Social Security Act's definition of disability.  Additionally, the ALJ in fact gave substantial weight to Dr. Morse's findings, which did not offer an opinion as to the extent of

Plaintiff's limitations concerning contact with the public, supervisors, and coworkers, and thus the ALJ could not have relied upon or rejected this opinion.

The ALJ's decision gave "substantial weight" to the State Agency physician's opinion that Plaintiff "is able to relate to and accept direction from supervisors and is able to remain socially appropriate with co-workers without being distracted by them, but has difficulty dealing with the public." (AR 14.)  The ALJ also gave "substantial weight" to Dr. Morse's opinion that Plaintiff "is able to endure normal stress, yet has marked difficulty in the area of auditory processing, making it difficult for him to receive and translate instructions in order to make accurate decisions regarding his behavior." (AR 14-15.)

However, the ALJ gave "little weight" to Dr. Morgan's finding that Plaintiff is disabled, asserting that it was "not clear" if Dr. Morgan was familiar with the definition of disability contained in the Social Security Act and postulated that Dr. Morgan was referring to Plaintiff's inability to perform his past work. (AR 15.)  Further, the ALJ found that "Dr. Morgan apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." (AR 15.)  The ALJ further asserted that "Dr. Morgan's findings are inconsistent with the findings of Dr. Morse and the State Agency physician."

### 1.    Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or an examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.* If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific

and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

### 2. The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting Dr. Morgan's Opinion

The ALJ gave Dr. Morgan's opinions "little weight," rejecting the finding of disability. The ALJ stated:

> Although Dr. Morgan stated that the claimant is 'disabled,' it is not clear that he was familiar with the definition of 'disability' contained in the Social Security Act and regulations. Specifically, it is possible that Dr. Morgan was referring solely to an inability to perform the claimant's past work, which is consistent with conclusions reached in this decision. Dr. Morgan's opinion that the claimant meets the criteria of listing 12.04 is given little weight. As discussed above, the evidence does not support a finding that the claimant meets the criteria for listing 12.04. Additionally, Dr. Morgan apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all of what the claimant reported. Furthermore, Dr. Morgan's findings are inconsistent with the findings of Dr. Morse and the State Agency physicians.

(AR 15.)

The ALJ rejected Dr. Morgan's opinion because (1) the ALJ disagreed with Dr. Morgan's finding that Plaintiff was disabled, (2) the ALJ found that Plaintiff did not meet the criteria for a 12.04 Listing, and (3) Dr. Morgan's opinion conflicted with the findings of other physicians, specifically Dr. Morse and State Agency physician Dr. Aquino-Caro.

"[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. The ALJ must provide an interpretation of the facts and conflicting clinical evidence, and make a finding based on that interpretation *See Tommasetti*, 533 F.3d at 1041. However, it is improper for the ALJ to sets forth conclusions determining that a doctor's findings are rejected without providing an interpretation of the facts. "The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Here, the ALJ set

out the relevant facts and made findings, but she failed to clearly state her interpretation of the evidence which led to her ultimate determination. The ALJ cannot just offer conclusions in the guise of findings. *Cf. Kepler v. Chater* 68 F.3d 387, 391 (10th Cir. 1995).

### a.      Dr. Morgan's Finding that Plaintiff is Disabled

The ALJ's decision rejected Dr. Morgan's finding of disability, stating that the doctor apparently was not "familiar" with the definition of disability as it pertains to the Social Security Act, even though he was examining Plaintiff at the request of the Agency. (AR 15, 241.) The ALJ postulated that it was "possible" that Dr. Morgan's disability finding was based on Plaintiff's inability to do his former work and not upon Plaintiff's potential ability to do any work. (*See* AR 15.) This may be a legitimate ground to give less weight to a doctor's opinion regarding disability when the determination is supported by findings and interpretative rationale. However, the ALJ failed to articulate any reason in support of this determination and merely offers it as a conclusion. It is unclear why the ALJ found that Dr. Morgan opined only as to Plaintiff's ability to do past work. As such, the ALJ failed to offer any rationale to support her finding.

### b.      Dr. Morgan's Finding that Plaintiff Does Not Meet the Disability Listing

The ALJ's stated that the evidence does not support Dr. Morgan's opinion that Plaintiff met the criteria for the Listing 12.04, but again provided no explanation to support the conclusion as to why Dr. Morgan's determination was invalid. (*See* AR 15.) The ALJ's conclusion appears to be based, in part, on the determination that Dr. Morgan relied upon Plaintiff's subjective reporting, but the ALJ failed to explain why this is problematic.

"A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989)). However, "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan*, 528 F.3d at 1199-1200. Here, the ALJ failed to account for Dr. Morgan's objective testing of Plaintiff.

1    Dr. Morgan administered the following tests: the Wechsler Adult Intelligence Scale III, the

2    Beck Depressive Inventory II, the Barkley Attention Deficit Hyperactivity Disorder Behavior

3    Checklist, partial Weschler Memory Scale III, and the Wide Range Achievement Test - Spelling and

4    Reading. (AR 241.) As such, Dr. Morgan based his conclusions both on Plaintiff's subjective

5    complaints and his observations and testing. (AR 248-50.) Dr. Morgan did not discredit Plaintiff's

6    complaints and further relied upon his own testing in reaching his conclusions. The ALJ thus needed

7    to provide specific reasons for rejecting Dr. Morgan's findings and not simply point out that Dr.

8    Morgan based his opinion upon Plaintiff's subjective complaints without accounting for Dr. Morgan's

9    objective testing.

10    Defendant relies upon the unpublished case of *Calkins v. Astrue*, 384 Fed. Appx. 613 (9th Cir.

11    2010) for the assertion that a clinical examination and administration of psychological testing may

12    be rejected if it relies to a very significant extent on the claimant's subjective reporting. *Id*. at 615.

13    Even accepting this argument, the ALJ still failed to articulate the reasoning behind the conclusions

14    asserted in the decision. The ALJ does not set forth what statements made by Plaintiff to Dr. Morgan

15    were inaccurate or how any statements by Plaintiff corrupted or invalidated Dr. Morgan's assessment

16    that Plaintiff met the Listing requirements. In fact, the ALJ does not specify what aspect of the

17    Listing Dr. Morgan inaccurately or incorrectly considered.

18    **c.    Dr. Morgan's Findings Compared with Other Medical Findings**

19    The ALJ concluded that Dr. Morgan's findings are inconsistent with the findings of Dr. Morse

20    and the State Agency physician Dr. Aquino-Caro but again provided no explanation as to the extent

21    of these inconsistencies and failed to specifically identify to which inconsistencies she was referring.

22    (AR 15.)

23    An inconsistency with other medical opinions does not necessarily invalidate a physician's

24    findings; the ALJ must provide specific and legitimate reasons to reject the findings and not just point

25    out that inconsistencies exist. The mere inconsistency between doctors' opinions does not allow the

26    ALJ to simply select one opinion based solely on the fact that an inconsistency exists. It is the ALJ's

27    responsibility to confront the conflict and explain how the conflict is resolved by assigning weight

28    to differing opinions based on cogent, specific, and legitimate reasons. *Morgan*, 169 F.3d at 603;

1  *Reddick v. Chater*, 157 F.3d 715, 722, 725 (9th Cir. 1998).  Merely pointing out that a conflict of

2  opinion exists is not a legitimate ground, in and of itself, to assign weight or discredit one of the

3  opinions.

4        **d.**    **Defendant's Post Hoc Rationalizations**

5       In the opposition brief, Defendant provides several reasons as to why the ALJ was correct in

6  rejecting Dr. Morgan's opinion: it relied too heavily on Plaintiff's self reports and Plaintiff lacked

7  credibility, it contradicted the record and itself, and it did not follow the Social Security Act's

8  definition of disability.  Defendant correctly points out that the ALJ found Plaintiff to be "not

9  credible" regarding his symptoms to the extent that his complaints were inconsistent with the ALJ's

10  RFC.  (AR 13.)  Specifically, the ALJ noted that Plaintiff was able to work as a fast food crew

11  member for three years with the same level of alleged disabling impairments, he stopped taking his

12  medications, he may have been seeking treatment only in an attempt to receive benefits, and his

13  described daily activities were not limited to the extent one would expect given his purported

14  limitations.  (AR 14.)  Defendant correctly notes that Plaintiff did not challenge the ALJ's credibility

15  finding in his opening brief and thus has waived that argument.  *See Omega Environmental, Inc. v.*

16  *Gilbarco, Inc.*, 127 F.3d 1157, 1167 (9th Cir. 1997).

17       Defendant also argues that there were inconsistencies between Dr. Morgan's findings and the

18  rest of the record (noting, for example, a conflict with Dr. Morse's memory test result and with the

19  finding that Plaintiff suffers from auditory hallucinations) (AR 201, 202, 241, 243, 246.)  Defendant

20  further contends that there are conflicts even within Dr. Morgan's own findings (noting that Dr.

21  Morgan found Plaintiff's limitation regarding his daily living activities to be at times marked and at

22  other times moderate) (AR 248, 261.)  Defendant asserts that Dr. Morgan did not appear to be familiar

23  with the requirements of the Social Security program, contending that to find that Plaintiff is disabled

24  under the criteria for listing 12.04, Plaintiff must meet the requirements of paragraph A and either B

25  or C  –  Defendant argues that Dr. Morgan only found that Plaintiff met the requirements for

26  paragraph A but not B or C.  (AR 254, 261.)

27       The credibility issue that concerned Dr. Morgan was noted in the ALJ's decision, but not

28  explained; however, none of these other reasons were articulated in the decision.  While the Court

can draw reasonable inferences that exist from the ALJ's opinion, *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989), the Court cannot consider Defendant's post hoc rationalizations.  The Ninth Circuit has repeatedly emphasized that the "bedrock principle of administrative law" is that a "reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court is "constrained to review the reasons the ALJ asserts.").  An agency's decision cannot be affirmed on the ground that the agency did not invoke in making its decision.  *Pinto v. Massanari,* 249 F.3d 840, 847-48 (9th Cir. 2001).

> **e.       Remand is Appropriate to Address the Deficiencies in the ALJ's Decision**

Remand is appropriate when, like here, a decision does not adequately explain how a conclusion was reached, "[a]nd that is so even if [the Commissioner] can offer proper post hoc explanations for such unexplained conclusions," for "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Barbato v. Comm'r of Soc. Sec.*, 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (citations omitted).

> **3.       The ALJ Properly Considered the Opinions of Dr. Morse and Dr. Aquino-Caro in Determining the RFC**

Plaintiff argues that the ALJ implicitly rejected Dr. Morse's finding that Plaintiff's ability to interact with the public, supervisors, and coworkers was impaired and, as such, the ALJ's RFC was not supported by substantial evidence.

In determining the RFC, the ALJ gave substantial weight to the State Agency physician Dr. Aquino-Caro's opinion, and thus found that Plaintiff "is able to relate to and accept direction from supervisors and is able to remain socially appropriate with coworkers without being distracted by them, but has difficulty dealing with the public."  (AR 14, 218.)  The ALJ also gave substantial weight to Dr. Morse's opinion, specifically that Plaintiff is able to maintain attention, concentration, persistence, and pace, can endure normal stress, but has marked difficulties in the area of auditory processing.  (AR 14-15, 204.)

Dr. Morse opined that, "[b]ased upon observations of current behavior and reported history and the claimant's difficulties with auditory processing, his ADHD, and impulsivity[,] the claimant's ability to interact with the public, supervisors, and coworkers appears to be impaired."  (AR 204.) Plaintiff contends the State Agency physician "inexplicably interpreted Dr. Morse's opinion as distinguishing the general public from co-workers and supervisors," that interpretation had "no support in the record," and the reviewing physician "made it up." (Doc. 16, 7:16-19.) Plaintiff argues that since the ALJ's RFC was based upon this inaccurate interpretation, it is thus invalid.

The ALJ based the RFC on Plaintiff's "activities of daily living, his past relevant work and the opinions of Dr. Morse and the State Agency physician." (AR 15.)  State Agency physician Dr. Aquino-Caro determined that Plaintiff was less impaired in interactions with supervisors and co-workers than with the general public and supported, in part, her finding based upon Plaintiff's activities of daily living.  Dr. Aquino-Caro found that Plaintiff "may have difficulty interacting at times.  But, [activity of daily living] shows he can maintain friendships so his social difficulties are not so impaired as to preclude interactions in the workplace." (AR 221.)  As such, Dr. Aquino-Caro did not base her finding upon a misreading of Dr. Morse's opinion but considered Plaintiff's daily living activities and social interactions and gave a specific reason why she found Plaintiff less impaired in interactions with supervisors and coworkers than with the public generally.

The opinion of a non-examining physician "may constitute substantial evidence when it is consistent with other independent evidence in the record."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Accordingly, the ALJ's RFC was properly based upon Dr. Aquino-Caro's finding, which was in turn supported by adequate rationale and independent evidence in the record.

**C.      The ALJ's Consideration of Lay Testimony**

Plaintiff argues that the ALJ failed to give good reasons for rejecting the lay testimony of Ms. Gallagher, Plaintiff's mother, including her observations concerning Plaintiff's difficulties with concentration, listening, sleeping, and ability to follow instructions. (AR 136-38.) The ALJ gave Ms. Gallagher's opinion "little weight," finding:

> Ms. Gallagher stated that the claimant 'was never able to focus, concentrate or pay attention.' . . . The [ALJ] acknowledges that the claimant has difficulty in the area of

auditory processing, making it difficult for him to receive and translate instructions. However, the claimant's significant work experience as a fast food crew member reveals that the claimant's abilities are not as limited as alleged by Ms. Gallagher.

(AR 15.)

"While an ALJ must take into account lay witness testimony about a claimant's symptoms, the ALJ may discount that testimony by providing 'reasons that are germane to each witness.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay witness testimony, the ALJ need only provide "arguably germane reasons" for dismissing the testimony, even if she does "not clearly link [her] determination to those reasons." *Lewis*, 236 F.3d at 512. An ALJ may reject lay witness testimony if it is inconsistent with the record. *See, e.g.*, *id.* at 511-12 (rejecting lay witness testimony conflicting with the plaintiff's testimony and the medical record); *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005) (rejecting lay witness testimony conflicting with the medical record). Further, the ALJ may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

Here, the ALJ found that Ms. Gallagher's testimony that Plaintiff was "never able to focus, concentrate, or pay attention" was not supported by the record. (AR 15, 127.) The ALJ rejected that testimony and found that Plaintiff's "significant work experience" in fast food indicated that Plaintiff's "abilities are not as limited as was alleged." As such, the ALJ gave a reason that was germane to Ms. Gallagher and supported by the record for discounting her testimony. Accordingly, the ALJ properly rejected the lay testimony.[3]

## D.    Remand is Appropriate

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In Social Security cases,

---

[3] Plaintiff argues that the record does not support the ALJ's reasoning because Plaintiff was terminated from his position as a fast food worker because he was "too slow." (AR 37.) However, the record indicates that Plaintiff worked for three years in fast food restaurants but was only "let go" from "[o]ne job" due to his speed. (AR 110, 37.) As such, the record shows that Plaintiff had worked for three years and supports the ALJ's finding that Plaintiff had "significant work experience," contradicting Ms. Gallagher's assertion that Plaintiff "was never able to focus, concentrate, or pay attention." (AR 15, 127.)

the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal quotation marks omitted).

The Court concludes that the ALJ erred in failing to consider Dr. Morgan's objective testing of Plaintiff when giving weight to the medical opinion.  Further, the ALJ erred in only providing conclusions as to the reasoning for rejecting Dr. Morgan's opinion and not providing interpretation of the facts and an explanation to support the conclusions reached.  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Cf. Benecke*, 379 F.3d at 593; *Harman*, 211 F.3d at 1178.  Here, remand is appropriate because the ALJ must properly address Dr. Morgan's opinion before a disability determination can be made. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be REVERSED and the case REMANDED to the ALJ to make additional findings consistent with this order.

This Findings and Recommendation will be submitted to the Honorable Oliver W. Wanger pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with this Findings and Recommendation, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

1   The parties are advised that failure to file objections within the specified time may waive the right to

2   appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

3

4   IT IS SO ORDERED.

5   **Dated:**    **August 9, 2011**                            **/s/ Sheila K. Oberto**
                                         UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28